IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFERY RICHARD HOLMES, | ) | CASE NO. 1:18CV2076 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PAMELA A. BARKER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Jeffery Holmes ("Holmes") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

**I. Procedural History**

Holmes protectively filed applications for DIB and SSI in May 2013, alleging a disability onset date of March 1, 2013.  Tr. 442, 15.  He alleged disability based on the following: pain and limitations in his shoulders, lumbar spine and left leg; pain in his buttocks; arthritis; dysthymic disorder; anxiety; paranoia; and memory loss.  Tr. 454.  After denials by the state agency initially (Tr. 172, 173) and on reconsideration (Tr. 204, 205), Holmes requested an administrative hearing.  Tr. 275.  A hearing was held before an Administrative Law Judge ("ALJ") and Holmes

1

amended his alleged onset date to April 1, 2013. Tr. 403. On February 26, 2016, the ALJ determined that Holmes was not disabled prior to May 1, 2015, but was disabled after that date. Tr. 227-228. Holmes appealed this decision to the Appeals Council. Tr. 316. The Appeals Council accepted review, vacated the ALJ's decision, and remanded to an ALJ for further review. Tr. 239-241.

Upon remand, a new ALJ held a hearing on December 21, 2017. Tr. 46-67. In his January 16, 2018, decision (Tr. 15-38), the ALJ determined that there are jobs that exist in the national economy that Holmes can perform, i.e., he was not and is not disabled at any time during the relevant time period. Tr. 37-38. The Appeals Council denied Holmes's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3.

## II. Evidence

### A. Personal and Vocational Evidence

Holmes was born in 1966 and was 46 years old on his alleged onset date. Tr. 36. He previously performed work as a maintenance technician. Tr. 70.

### B. Relevant Opinion Evidence[1]

#### 1. Treating source

On March 19, 2015, Holmes's treating physician, James R. Wolfe, M.D., provided a medical opinion in the context of a routine medication refill appointment. Tr. 800. Dr. Wolfe opined that Holmes's condition was stable, he was not physically limited, and Dr. Wolfe had not set any specific physical restrictions. Tr. 800. Dr. Wolfe stated, "Right now [Holmes] has a lot of complaints, but nothing that rises to the level where he really wants to do anything about it."

---

[1] Holmes only challenges the ALJ's decision with respect to consultative examiner Dr. Cola's opinion and provides no summary of medical evidence other than Dr. Cola's opinion. Doc. 12. Thus, only the opinion evidence that relates to Holmes's challenges are summarized and discussed herein.

2

Tr. 800.  Holmes's physical examination was normal and he was diagnosed with shoulder arthritis, lumbar disc degeneration with radiculitis, and opioid dependence.  Tr. 800.  Dr. Wolfe continued Holmes's medications.  Tr. 800.

On August 18, 2017, Holmes saw Dr. Wolfe for facet injections.  Tr. 863.  Upon exam, Holmes had minimal tenderness in his back, mostly facet pain, and was otherwise normal.  Tr. 863.  Dr. Wolfe stated, "I have not set any physical limitations nor have I recommended against employment." Tr. 863.  He encouraged Holmes to stay active and stick with his exercise program.  Tr. 863.

### 2. Consultative Examiner

On December 2, 2015, Holmes saw Kristin Cola, D.O., for an orthopedic consultative examination for low back pain and bilateral shoulder pain.  Tr. 805.  Upon exam, Holmes was unable to touch his toes but was able to get on the examination table.  Tr. 806.  He had an antalgic gait and he appeared to be unsteady on his feet.  Tr. 806.  He could rise up on his heels and toes but was unable to walk on his heels or toes.  Tr. 806.  He had mild paraspinal tenderness to palpation in the lumbosacral region of his back, negative sciatic notch tenderness, a positive straight leg raise test on the right, diminished sensation to light touch on his anterior thighs bilaterally, and his reflexes were slightly diminished and symmetric.  Tr. 807.  He had full muscle strength and reduced range of motion in both shoulders and his lumbar spine.  Tr. 808-810.  Dr. Cola opined that, based on the lack of range of motion in his shoulders, Holmes would be limited to sedentary desk-type work (typing, talking on the phone, and writing).  Tr. 807.  He would be unable to do any overhead activities.  Tr. 807.  Based on his apparent unsteady gait, he would not be safe to crouch, crawl, or climb scaffolding or ladders.  Tr. 807.  He could perform sedentary work for about an hour at a time and would need "multiple breaks to stand up and walk

around and get readjusted." Tr. 807. He could lift up to five pounds and could only drive short distances. Tr. 807. He did not need to use an assistive device at work every day; Dr. Cola recommended he use an assistive device only on particularly painful days "given his unsteadiness with pain." Tr. 807.

On December 16, 2015, Dr. Cola completed a check-box form on behalf of Holmes. Tr. 812-817. Based on her initial examination, Dr. Cola opined that Holmes could occasionally lift and carry up to 10 pounds and never more; sit for six hours in a workday, stand for one hour in a workday, and walk for a one hour in a workday; he did not need a cane to ambulate; he could never reach overhead or in any other direction with either hand; he could frequently handle, finger, and feel bilaterally and use foot controls and occasionally push and pull bilaterally; he could never balance, stoop, kneel, crouch or crawl; and he could occasionally climb ramps and stairs but never ladders or scaffolds. Tr. 812-815. Dr. Cola opined that Holmes can perform activities such as shopping, use public transportation, travel without a companion, prepare simple meals and feed himself, care for his personal hygiene, and sort, handle, and use paper files. Tr. 817. He could not ambulate without using a wheelchair, walker, or two canes or two crutches, he was not able to climb a few steps at a reasonable pace with the use of a single hand rail, and he was not able to walk a block at a reasonable pace on rough or uneven surfaces. Tr. 817.

### D. Testimonial Evidence

#### 1. Holmes's Testimony

Holmes was represented by counsel and testified at the administrative hearing. Tr. 49. He testified that he has been seeing Dr. Wolfe for pain management since 2013. Tr. 50-51. Dr. Wolfe prescribes medication and gives him injections. Tr. 50. He has terrible pain in his shoulders that has gotten worse over time. Tr. 53. He used to get shoulder injections from Dr.

Wolfe but has stopped them because they stopped helping him. Tr. 53-54. Since April 2013, his pain level has stayed the same or gotten worse. Tr. 54. He has difficulty reaching; he is unable to reach over his head and has difficulty reaching straight out in front. Tr. 54. He is able to reach in front of him about five inches; for example, he can pick up a piece of paper on the table in front of him. Tr. 54-55. Beyond five inches he starts getting pain. Tr. 55. He can lay his arms on the table, but he has to do it slowly and it hurts. Tr. 55. When asked if he has problems grasping or handling things, Holmes stated, "My gripping is not too bad." Tr. 57. It has gotten better, but he "can't do lifting with the gripping with very much weight." Tr. 57. He has no issues with fingering and at times has issues with feeling due to numbness. Tr. 57-58.

Holmes also has pain in his mid and lower back that radiates down into both legs. Tr. 58. He saw a spine surgeon who did some injections, considered surgery, but then thought he had better wait on the surgery and sent him to Dr. Wolfe. Tr. 58. Dr. Wolfe gives him medication and injections. Tr. 58. There is no talk of surgery at this point. Tr. 58. He has had every kind of physical therapy you could think of since 2009 and it hasn't helped. Tr. 58. When asked about a treatment note that he used a walker or two crutches, Holmes stated that he did not use two crutches, "there is no walker," and he has a cane that he uses sometimes to help. Tr. 59. He started using a cane at home but he is embarrassed to use it outside the house. Tr. 59. He has never had a cane or walker prescribed to him; he was told in the past that if he needs assistance he should look at getting a cane so he did. Tr. 62. He only uses the cane at home; when he is out and about he tries to use other ways such as chairs or walls or handrails. Tr. 63. He did not have a cane at the hearing. Tr. 63.

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") also testified at the hearing. Tr. 64-66. The ALJ asked the

VE to determine whether Holmes could perform his past work or any other work if he had the limitations assessed in the ALJ's RFC determination, and the VE answered that such an individual could not perform Holmes's past work but could perform work as an office helper, photocopy machine operator, and storage facility rental clerk. Tr. 65.

### III. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to

6

        determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.       If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[2] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his January 16, 2018, decision, the ALJ made the following findings:

1.       The claimant meets the insured status requirements of the Social Security Act through December 31, 2014. Tr. 21.

2.       The claimant has not engaged in substantial gainful activity since April 1, 2013, the alleged onset date. Tr. 21.

3.       The claimant has the following severe impairments: degenerative joint disease of the left shoulder, including left shoulder tear, impingement, and status post arthroscopy; degenerative disc disease of the spine; degenerative joint disease of the right shoulder, including osteoarthritis of the joint, status post right shoulder arthroscopy; and obesity. Tr. 21.

4.       The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 24.

5.       The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant [i]s

---

[2] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

      capable of lifting, carrying, pushing, pulling 20 pounds occasionally and 10 pounds frequently. He could sit, stand, and walk for 6 hours each out of an 8-hour workday. He could occasionally climb ramps and stairs, but would be precluded from climbing ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. He could occasionally reach overhead. Tr. 25.

6. The claimant is unable to perform any past relevant work. Tr. 36.

7. The claimant was born in 1966 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged onset date. The claimant subsequently changed age category to closely approaching advanced age. Tr. 36.

8. The claimant has at least a high school education and is able to communicate in English. Tr. 36.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Tr. 36.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. Tr. 37.

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2013, through the date of this decision. Tr. 38.

## V. Plaintiff's Arguments

Holmes challenges the ALJ's treatment of consultative examiner Dr. Cola's opinion. Doc. 12, pp. 7-12.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less

8

than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989) (per curiam) (citations omitted)). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

The ALJ thoroughly discussed Dr. Cola's opinion, detailing, in almost a page and a half, numerous reasons for the weight given to various parts of her opinions. Tr. 33-35. Rather than reciting all these reasons, the undersigned will address Holmes's challenges in turn.

First, Holmes points out that the ALJ stated, "Dr. Cola was a one time examining source and observed the claimant only on one brief occasion, providing no ongoing relationship with the claimant." Tr. 34. Holmes complains that the ALJ's assertion that the examination was "brief" is unsupported because the record does not indicate how long Dr. Cola met with Holmes on December 2, 2015. Doc. 12, p. 9. Nevertheless, Holmes does not dispute that he only met with Dr. Cola one time, on December 2, for a consultative examination. The ALJ's use of the word "brief" to describe the occasion is not reversible error.

Next, Holmes takes issue with the ALJ's finding that Dr. Cola's two opinions were inconsistent. The ALJ explained, in relevant part,

> Here, the undersigned finds inconsistency between [Dr. Cola's] checkbox form and her provided functional statement on her function form. First, she noted the claimant could lift up to five pounds and subsequently on the form she notes lifting/carrying up to 10 pounds. On the functional form, she indicates the claimant would intermittently require the use of a cane for stability, but on the checkbox form, she notes the claimant does not require any cane for ambulation. The undersigned finds the inconsistencies erode the overall reliability of her statements....

Tr. 34. Holmes argues that the fact that Dr. Cola provided different lifting/carrying restrictions

9

was not inconsistent because the smallest weight increment available on the checkbox form is "up to 10 pounds." Doc. 12, p. 9. This fact may provide an explanation for the inconsistency, but it does not eliminate the inconsistency. Moreover, Dr. Cola had the option of selecting the box that indicated that Holmes could "never" lift up to 10 pounds, but she did not select this option. Tr. 812. As it stands, Dr. Cola opined that Holmes could lift up to five pounds and opined that he could lift up to ten pounds; these opinions are inconsistent.

Holmes also takes issue with the ALJ's finding that Dr. Cola's opinions about Holmes's need for a cane is inconsistent. He complains that Dr. Cola's statements are only inconsistent because the ALJ interpreted Dr. Cola's opinion—that Holmes should use an assistive device when he was having a particularly painful day—as Holmes "intermittently" requiring a cane. Doc. 12, p. 9. In other words, Holmes appears to dispute that he had painful days as often as intermittently. In any event, as the ALJ noted, Dr. Cola also found that Holmes required the use of a wheelchair, walker, or two crutches or two canes to ambulate. Tr. 34. There is an inconsistency between Dr. Cola's opinion that Holmes did not need a cane, that he needed a cane on particularly painful days, and that he needed a wheelchair, walker, or two crutches or two canes to ambulate. It was not error for the ALJ to observe these inconsistencies and the ALJ's observation was not "nitpick[ing]" or unsupported by the evidence, as Holmes alleges. *See Ledford v. Astrue*, 311 Fed. App'x 746, 754 (6th Cir. 2008) (internal inconsistencies in a medical opinion are a proper basis for discrediting that opinion).

Next, Holmes challenges the following portion of the ALJ's discussion of Dr. Cola's opinions:

> The record does not support the claimant is unable to walk on uneven surfaces or that he cannot walk up stairs at a reasonable pace or with the use of a handrail. His treating physician [Dr. Wolfe] in October 2017 provided no physical limits and indicated that with spinal injections and routine pain medications his back pain and associated

10

>symptoms were controlled, providing no work related limits or preclusions on work activity.

Tr. 34. Holmes argues that the ALJ's reliance on Dr. Wolfe's opinion was "inappropriate" because the ALJ discredited Dr. Wolfe's opinion. Doc. 12, p. 10. The undersigned disagrees the ALJ's reliance upon Dr. Wolfe's opinion was inappropriate; although the ALJ found Holmes was more limited than Dr. Wolfe opined, it was not error for him to rely on Dr. Wolfe's opinion to illustrate why Dr. Cola's opinion was too limiting. Moreover, the ALJ provided additional support for his rejection of Dr. Cola's opinion that Holmes was unable to walk on uneven surfaces or up stairs at a reasonable pace with the use of a handrail, none of which Holmes challenges. See Tr. 34 (the ALJ observing that the record did not support ongoing gait instability; Holmes had not been prescribed an assistive device, he walked into the hearing without one, and he stated that he did not use an ambulatory aid; he was observed by providers to ambulate with a normal gait at times and required no more than conservative medication management; the record did not support a lower extremity impairment and Holmes's radicular pain was controlled with spinal injections and medication; and Holmes could operate foot controls as evidenced by him operating his car and his riding lawn mower).

Holmes argues that the ALJ erred "by substituting his own lay judgment for the judgment of a specialized medical professional." Doc. 12, p. 11. He asserts that Dr. Cola's assessment contained "objective data and observations" and "her diagnoses and opinions were supported by these objective findings." Doc. 12, p. 11. He does not identify what, precisely, the ALJ allegedly substituted his own judgment for and the undersigned declines to speculate. *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way,

11

leaving the court to ... put flesh on its bones.") (internal citations omitted).

Finally, Holmes asserts that the ALJ "completely failed to assess or weigh certain limitations opined by Dr. Cola[]," such as that Holmes be limited to "sedentary desk type work, like typing and talking on the phone and writing," that it would not be safe for him to crouch or crawl, and that he would need multiple breaks during the work day to stand up and walk around. Doc. 12, p. 11. Holmes does not cite legal authority requiring an ALJ to detail the precise reasons for discounting every limitation assessed in a medical opinion. Moreover, Dr. Cola expressly stated that Holmes was limited to sedentary, desk-type work due to the limited range of motion in his bilateral shoulders. Tr. 807. The ALJ, when discussing Dr. Cola's opinion, explained that, after Holmes's shoulder surgeries, he had normal strength, normal motor skills, and only some reduced range of motion in his right shoulder and that he shopped, prepared meals, and washed laundry. Tr. 34. Regarding his postural limitations, the ALJ commented that Holmes provided some care to his disabled brother and his mother prior to her passing, which required the use of some postural activities greater than the limitations assessed by Dr. Cola. Tr. 34. In other words, the ALJ discussed why he found Holmes to be less restricted with respect to his shoulder impairments and ability to perform postural maneuvers than Dr. Cola did. Lastly, because the ALJ did not restrict Holmes to sedentary work (i.e., sitting for six hours), Dr. Cola's opinion that Holmes required the ability to stand up and walk around periodically to readjust if sitting for six hours was not relevant.

In short, the ALJ did not err when he considered Dr. Cola's opinions and his decision is supported by substantial evidence. It must, therefore, be affirmed. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (the Commissioner's decision is upheld so long as substantial evidence supports the ALJ's conclusion).

## VII. Conclusion

For the reasons set forth herein, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

Dated: July 11, 2019

                                                               */s/ Kathleen B. Burke*
                                                           Kathleen B. Burke
                                                           United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).